IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JAMES NHAN,<br><br>        Defendant. | No. CR17-4050-LTS<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

Defendant James Nhan pled guilty, pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) agreement, to manufacture of anabolic steroids, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(E). The parties have recommended a sentence of probation with a condition requiring Mr. Nhan to serve two consecutive weeks in jail within a year. PSIR ¶ 3.

Mr. Nhan is eligible for one to five years' probation by statute and the guidelines. *Id.* ¶¶ 51-52. Within that range, the plea agreement leaves the duration of probation to the Court's discretion. As for imprisonment, the guidelines recommend between six and 12 months (total offense level 10, criminal history category I). *Id.* ¶ 47. By statute, the offense carries between zero and 10 years in prison. *Id.* ¶ 46.

At the sentencing hearing, Mr. Nhan intends to offer character letters into evidence as Exhibit A (currently marked as A-1 through A-12). He will not offer testimony.

The only issue appears to be whether the Court will accept the Rule 11(c)(1)(C) plea agreement. The Court should accept the agreement for the following reasons.

*First*, the offense conduct described in the PSIR occurred between approximately November 2014 and December 2015, and thus terminated over two years ago. *See* PSIR ¶¶ 5-8. During that period, Mr. Nhan was only 20 and 21 years old and living with his parents. *See id.* p. 2, ¶¶ 5, 33. According to those who know him well, Mr. Nhan was filled with insecurities. *See* Ex. A-6; *see also* Ex. A-8. The offense conduct occurred during a period in which Mr. Nhan was using steroids himself. *See* PSIR ¶ 37. Perhaps to combat his insecurities, Mr. Nhan had become "very into fitness and lifting" at the time. Ex. A-5. Since December 2015, Mr. Nhan has not engaged in other criminal behavior. He has not used steroids since 2015, and he has never used any other illegal drug. *See* PSIR ¶ 37. He committed no violations of his pretrial and presentencing release in this case. *Id.* ¶ 2.

*Second*, although the guidelines provide for a range of imprisonment from six to 12 months, the quantity of steroids described in the PSIR very nearly called for the lowest sentencing range on the guideline table. The offense involved 5,514.32 units of a Schedule III controlled substance, corresponding to a base offense level of 12. *Id.* ¶ 13 (citing USSG § 2D1.1(c)(14)). The guidelines provide for a base offense level

2

of 10 for an offense involving at least 2,500 but less than 5,000 units of a Schedule III controlled substance. USSG § 2D1.1(c)(15). With a base offense level of 10, rather than 12, the guideline range in this case would have been zero to six months' imprisonment (assuming credit for acceptance of responsibility).

*Third*, beyond a speeding ticket, Mr. Nhan has never been in any trouble before in his life. He has no other arrests or convictions. PSIR ¶¶ 22-24, 27-29. As such, this case understandably "shocked" Mr. Nhan's family and friends. *E.g.*, Ex. A-4. Because he previously had a clean record, "[t]he worst part for James is/will be realizing that he will have a legal record" for a "short-sighted, stupid choice." *Id.* Moreover, Mr. Nhan has suffered public shame in his hometown. *See* Ex. A-5.

*Fourth*, Mr. Nhan has an excellent educational record, suggesting that he has significant potential for social productivity. He has a particular aptitude for computers. In 2012, he graduated from MOC-Floyd Valley High School, where he organized and led the school's chess club. In 2016, he obtained bachelor's degrees in computer science and business administration from Northwestern College in Orange City. While in college, Mr. Nhan served as an English-as-a-Second-Language ("ESL") tutor. He continues to further his education and expects to earn a master's degree in computer science from Iowa State University in either 2018 or 2019. *See* PSIR ¶¶ 38-40; Ex. A-9.

3

*Fifth*, while he has pursued an education, Mr. Nhan has also established a strong work history. He hails from a "family of immigrants" and has seen how hard his parents and other family members have worked for a better life. Ex. A-2. He worked for many years at his parents' Chinese restaurant, where he "always came to work and . . . had no problems with other employees." PSIR ¶ 41; *see also id.* ¶ 31. Several individuals who submitted character letters on Mr. Nhan's behalf discussed his hard work as a child and young adult to help at his parents' busy restaurant. Ex. A-1, A-4 to -5, A-7, A-9 to -12. He also worked for approximately six months for a computer sales and repair business, where his supervisors deemed him to be a "good employee" and "very smart." PSIR ¶ 41. Indeed, the co-owner of the business wrote in a character letter that he "would rank [Mr. Nhan] in the top 10 of employees, and top 3 in intelligence." Ex. A-5. Mr. Nhan is currently a paid teacher's assistant at Iowa State. PSIR ¶ 41.

*Sixth*, and finally, Mr. Nhan has a good and supportive family that will help him succeed in the future. *See id.* ¶¶ 31-32; *see also* Ex. A-1 through A-12. He asks that the Court consider the many thoughtful character letters submitted on his behalf.

For all of these reasons, the Court should accept the plea agreement and impose the recommended sentence.

Respectfully submitted,

FEDERAL DEFENDER'S OFFICE
701 Pierce Street, Suite 400
Sioux City, Iowa   51101
Telephone:   712-252-4158
E-mail:   Brad_Hansen@fd.org

By:   /s/ Brad Hansen
BRAD HANSEN
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE
I hereby certify that on February 7, 2018, I filed this
document via ECF, which will serve notice of its
filing to SAUSA Alexander.

/s/ Brad Hansen